NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-707

JOHN DOE, SEX OFFENDER REGISTRY BOARD NO. 527940

vs.

SEX OFFENDER REGISTRY BOARD.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, John Doe, appeals from a Superior Court judgment affirming his classification by the Sex Offender Registry Board (SORB or board) as a level two sex offender. On appeal, Doe argues that the hearing examiner (examiner), who reduced his sex offender classification from a level three to a level two, failed to provide adequate consideration of (1) Doe's offense-free time in the community (factor 29) and (2) his participation in sex offender treatment (factor 32).[1] Doe also

_____

[1] We refer to SORB's classification factors by number, or name and number, it being understood that each of them appears in the corresponding subpart of 803 Code Mass. Regs. § 1.33 (2016). SORB's regulations were updated in 2025, but the 2016 version of the regulations were in effect at the time of the examiner's decision in this case and therefore govern our analysis.

argues that the examiner misapplied factor 2 (repetitive and compulsive behavior) to him.  For the reasons set forth below, we conclude that a remand is necessary for the examiner to address what weight, if any, to give Doe's offense-free time in the community prior to his 2022 conviction and to reconsider the decision to give moderate rather than full weight to Doe's participation in sex offender treatment.

Background.  In 2011, the parents of a ten year old boy reported to police that Doe had sexually assaulted their son at day camp, where Doe was working as a camp counselor.  The boy's parents did not wish to press criminal charges, and Doe was never formally charged.[2]  From February 2012 until March 2013, Doe worked at a mental health service provider as a therapeutic mentor.  In 2013, the mother of a nine year old boy with autism reported that Doe, the boy's therapeutic mentor at the time, had sexually assaulted her son.  The victim reported during a Sexual Assault Intervention Network (SAIN) interview that Doe had "touched and rubbed" the victim's buttocks over his clothing while at a local wildlife rehabilitation center.  Doe was arraigned on one count of indecent assault and battery on a

---

[2] Although Doe was never criminally charged with sexually assaulting the ten year old boy, the examiner found "sufficient reliable and credible evidence" to find the allegations that Doe had assaulted the boy as fact.

2

child under the age of fourteen and one count of assault and battery on a disabled person with injury. On June 1, 2016, Doe pleaded guilty to a single count of simple assault and battery and was sentenced to a three-year probation term.[3] As part of his probation, the plaintiff was referred to and enrolled in sex offender treatment.

In 2019, a few months before Doe completed his probationary term, additional allegations surfaced from Doe's former role as a therapeutic mentor -- a mother reported that in 2013 Doe had sexually assaulted her son, who was between nine and ten years old at the time. During a SAIN interview, the victim reported that Doe would drive him to isolated locations, touch the victim's penis and testicles, and take pictures of the victim's penis with his cell phone. The victim also reported that Doe had asked that the victim touch him, but the victim had refused. In June 2021, Doe pleaded guilty to two counts of indecent assault and battery on a child under fourteen and one count of enticing a child under sixteen. He was sentenced to a three-year probation term and was required to enroll in a sex offender

---

[3] Although the indecent assault charge was amended to simple assault and battery, the examiner found "sufficient reliable and credible evidence" to find as fact that Doe had sexual assaulted the victim.

3

treatment program, register with SORB, and have no unsupervised visits or employment with children under the age of sixteen.

In 2021, the board initially classified Doe as a level three sex offender, which he requested a hearing to challenge. The hearing was held in February 2022, at which Doe's father and brother testified in his favor. The examiner reviewed the witness testimony as well as several exhibits offered by SORB and Doe, including police reports, Doe's probation record, a victim impact statement, and letters of support for Doe. The examiner found evidence to support two high-risk factors, five risk-elevating factors, and gave full or partial weight to four risk-mitigating factors. The examiner issued a decision on June 7, 2022, ordering Doe to register as a level two sex offender and that his sex offender registry information be disseminated on the Internet.[4] A Superior Court judge affirmed the examiner's order, and this appeal followed.

Discussion. "To determine the validity of an agency's decision, the reviewing court must determine whether the decision is supported by substantial evidence" (citation omitted). Doe, Sex Offender Registry Bd. No. 6969 v. Sex Offender Registry Bd., 99 Mass. App. Ct. 533, 536 (2021). "The

---

[4] Doe sought and obtained a number of stays to the public dissemination of his sex offender registry information.

4

decision may only be set aside if the court determines that the decision is unsupported by substantial evidence or is arbitrary or capricious, an abuse of discretion, or not in accordance with law." Id. at 537, quoting Doe, Sex Offender Registry Bd. No. 356011 v. Sex Offender Registry Bd., 88 Mass. App. Ct. 73, 76 (2015). "In reviewing [the board's] decisions, we give due weight to the experience, technical competence, and specialized knowledge of the agency" (quotation and citation omitted). Doe, Sex Offender Registry Bd. No. 234076 v. Sex Offender Registry Bd., 484 Mass. 666, 670 (2020) (Doe No. 234076). Doe challenges the examiner's application of factors 29 (offense-free time in the community), 32 (sex offender treatment), and 2 (repetitive and compulsive behavior). We address each argument in turn.

a. Factor 29: Offense-free time in the community. Doe argues that the examiner's decision was arbitrary and capricious because it ignored the mitigating effect of his nine years of offense-free time while in the community. We agree.

Factor 29 states that, for an adult male such as Doe, the "likelihood of sexual recidivism decreases the longer the sex offender has had access to the community without committing any new sex offense or non-sexual violent offense." In cases in which an offender was not committed to custody, as here, offense-free time is calculated from "the most recent date of

5

conviction or adjudication of a sex offense or non-sexual violent offense."

Factor 29 also includes a temporal element, which states that an offender's risk of reoffense begins to decrease "after living in the community offense-free" for five or more years. Because Doe's most recent sex-offense adjudication was less than a year old when the board's decision issued in 2022, the plain language of factor 29 precludes its application here.

The conduct underlying Doe's 2021 adjudication, however, occurred in 2013, the same year that he committed the offense that resulted in his 2016 assault and battery conviction. It is undisputed that Doe did not commit any new offenses between 2013 and his February 2022 classification hearing. Therefore, although factor 29 cannot formally be applied, the record reflects that Doe lived in the community without reoffending for approximately nine years since his last known offenses, and nearly six years after being convicted of one of those offenses. At the hearing, Doe raised the fact that he had substantial offense-free time in the community multiple times.[5] The

--------

[5] Doe argues he should be given credit for offense-free time in the community dating back to 2013, when the offenses actually occurred. But factor 29 applies to offense-free time post-conviction, so even had Doe not been convicted again in 2021, his plea in 2016 would be the operative point of reference under the plain terms of factor 29. The question remains whether the examiner could nonetheless give Doe credit for additional years

examiner's decision nevertheless does not address how Doe's years of offense-free time in the community may affect his likelihood of recidivism.[6]

"[A] SORB classification decision will be deemed '[a]rbitrary or capricious,' G. L. c. 30A, § 14 (7) (g), if it fails to take into account reliable evidence that a factor relevant to a given offender affects the likelihood that the offender will recidivate."  Doe, Sex Offender Registry Bd. No. 68549 v. Sex Offender Registry Bd., 470 Mass. 102, 112 (2014) (Doe No. 68549).  We conclude that it is arbitrary for a hearing examiner to issue a decision that neglects to mention Doe's offense-free time in the community where the regulations indicate that such time indicates a lower risk of recidivism, even if such time cannot be considered under factor 29. "Troublesome facts . . . are to be faced rather than ignored" (citation omitted).  Doe, Sex Offender Registry Bd. No. 11204 v.

_____

of offense-free time, if not under factor 29 than under catch-all factor 37.  This is a question to be addressed by the examiner in the first instance.

[6] Because factor 29 appears to be based on research evaluating offense-free time following a conviction or incarceration, expert testimony may be required to aid the board in determining how the research applies to cases such as Doe's, in which a retroactive conviction would seemingly wipe out six years of postconviction offense-free time in the community.  Cf. Doe No. 234076, 484 Mass. at 670-671.

<u>Sex Offender Registry Bd</u>., 97 Mass. App. Ct. 564, 575 (2020) (<u>Doe No. 11204</u>).

We offer no opinion as to whether Doe should receive credit for his offense-free time in the community prior to his guilty plea in 2021.  We acknowledge that the clock likely reset in 2021 for purposes of a direct application of factor 29.  The facts in this case, however, require some explanation -- whether under factor 29 or the catch-all factor 37 -- of why a later conviction for an earlier crime undermines the predictive value of the multiple postconviction offense-free years Doe spent in the community.  This is particularly true where Doe raised the issue of his offense-free time in the community and the factor in question suggests that such time lowers an offender's risk of recidivism.[7]

b.  <u>Factor 32:  Participation in sex offender treatment</u>.
Doe also argues the examiner erred in applying factor 32 by giving it only moderate rather than full weight with no explanation.  Again, we agree.  For adult males, "participation in or successful completion of sex offense-specific treatment . . . is a risk-reducing factor."  Here, the examiner considered a letter from Doe's therapist indicating that Doe had

---

[7] Because we are vacating the classification decision and remanding for further proceedings, Doe's information may not be disseminated until the board issues a new decision.

8

participated in sex offender treatment from July 2016 to January 2022, the date of the letter. The therapist described the substantial effect sex offender treatment had on Doe, and, according to the therapist, Doe's participation in treatment reduced his dynamic risk from high to low. Doe's therapist completed a form provided by SORB describing Doe's treatment status. The therapist reported that Doe consistently attended and was an active participant in treatment, was able to fully describe all four phases of the deviant cycle, could identify his triggers, and demonstrated a capacity for victim empathy. In sum, the therapist provided uniformly positive feedback and indicated that Doe had successfully addressed all of the sixteen areas identified by the board on its status report form. Doe's father also testified at the hearing that Doe continued to participate in treatment "religiously" and the therapist noted that Doe stated he would continue to participate in treatment even after the expiration of the court order requiring him to do so. The examiner also reviewed a letter written by Doe, describing the positive effect sex offender treatment had on him.

At the same time, the record indicates that Doe remained subject to approximately two additional years of treatment, required by the terms of his probation, at the time of the

hearing. Under factor 32, the fact that Doe was attending treatment while under community supervision bears on the weight to be assigned.

The examiner appeared to credit all of the aforementioned evidence but nevertheless accorded Doe only moderate weight for factor 32 without explanation.[8] We acknowledge that the examiner has discretion "to consider which statutory and regulatory factors are applicable and how much weight to ascribe to each factor." Doe No. 68549, 470 Mass. at 109-110. And we agree that an examiner need not provide a lengthy explanation in response to "every argument or piece of evidence that the parties present." Doe, Sex Offender Registry Bd. No. 524174 v. Sex Offender Registry Bd., 106 Mass. App. Ct. 331, 338 n.6 (2025). Still, "we will not supply a reasoned basis for the agency's action that the agency itself has not given" (quotation and citation omitted). NSTAR Elec. Co. v. Department of Pub. Utils., 462 Mass. 381, 387 (2012). Here, we cannot discern whether the examiner assigned factor 32 moderate weight because

_____

[8] We decline Doe's invitation to expand the record to include materials that were filed in support of his motion to stay before the judge of the Superior Court. These affidavits were created approximately two years after his classification hearing. Because we are remanding the case for a new hearing, we leave it to the examiner to determine whether to consider materials submitted by Doe in support of his position that he poses a low degree of dangerousness and risk to reoffend.

Doe's participation remained court ordered rather than voluntary or for some other reason.  Where, as here, the record demonstrates meaningful and effective participation in treatment, but also that the treatment was ongoing and required, the examiner was required to explain how these considerations bore on the weight assigned.

SORB now suggests that the examiner declined to give full weight because Doe had not "completed" sex offense-specific treatment.  Although the record would support such a finding given that Doe remained in court-ordered treatment at the time of the hearing, that rationale does not appear in the examiner's decision and we cannot supply it on her behalf.  A reasoned analysis is required, as "[a]ny other approach would effectively insulate the SORB's action from effective review" (citation omitted).  See Doe No. 11204, 97 Mass. App. Ct. at 576.

Our review "does not turn on whether, faced with the same set of facts, we would have drawn the same conclusion" as the examiner (citation omitted).  Doe, Sex Offender Registry Bd. No. 356315 v. Sex Offender Registry Bd., 99 Mass. App. Ct. 292, 300 (2021).  Here, where the examiner has credited substantial evidence of Doe's effective participation in treatment, including evidence that his dynamic risk had decreased, yet assigned only moderate weight without explaining how the

11

regulatory distinctions between participation in treatment and completion were applied, remand is required. Id. (review turns on whether "a contrary conclusion is not merely a possible but a necessary inference" [citation omitted]).

c. Factor 2: Repetitive and compulsive behavior. Finally, Doe argues that it was erroneous for the examiner to apply factor 2, repetitive and compulsive behavior, to his case. We disagree. The board may apply factor 2 when an offender commits a sex offense after having been (1) "discovered and confronted (by someone other than the victim)"; or (2) "investigated by an authority for sexual misconduct." Doe committed two offenses in 2013, after being investigated by the Department of Children and Families for sexually assaulting a child in 2011. These facts fall within the plain language of factor 2. Doe's argument that factor 2 should not apply to him appears to be based on the mistaken assumption that, if he were credited with years of offense-free time under factor 29, that would preclude the application of factor 2. To the contrary, nothing in the regulations precludes the application of high-risk factors despite the presence of strongly mitigating factors. Indeed, "[t]hese factors may be present to varying degrees in any individual case." 803 Code Mass. Regs. § 1.33. Furthermore, even were the hearing examiner to conclude that

12

factor 29 should apply in full force, a "hearing examiner . . . may consider an offender's older sexual offenses where they are relevant to a holistic assessment of the offender's current degree of dangerousness."  Doe, Sex Offender Registry Bd. No. 496501 v. Sex Offender Registry Bd., 482 Mass. 643, 651 (2019) (Doe No. 496501).

Conclusion.  On this record, we cannot be certain that the examiner's final determination of Doe's risk of reoffense and degree of dangerousness was supported by substantial evidence. See Doe No. 496501, 482 Mass. at 649, citing G. L. c. 30A, § 14 (7).  The judgment of the Superior Court affirming SORB's classification decision is vacated, and a new judgment shall

enter vacating the decision of SORB and remanding the matter to SORB for further proceedings consistent with this decision.[9]

So ordered.

By the Court (Shin, Walsh & Allen, JJ.[10]),

Clerk

Entered: April 30, 2026.

---

[9] Although Doe urges this court to order that he be classified as a level one offender, we do not know that the examiner would conclude that Doe is a level one offender even if risk-mitigating factors 29 and 32 were given full weight. "It is appropriate for such issues to be resolved in the first instance by the agency in the adjudicatory process, not in judicial review of that process" (citation omitted). Doe, Sex Offender Registry Bd. No. 22188 v. Sex Offender Registry Bd., 101 Mass. App. Ct. 797, 804 (2022).

[10] The panelists are listed in order of seniority.