NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-31

JOHN DOE, SEX OFFENDER REGISTRY BOARD NO. 524375

vs.

SEX OFFENDER REGISTRY BOARD.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The petitioner, Doe, appeals from a Superior Court judgment upholding his classification by the Sex Offender Registry Board (SORB) as a level three sex offender.  Doe argues that the decision of the hearing examiner (examiner) did not reflect the informed reasoning that our case law requires and that the examiner abused her discretion by not giving proper weight to the applicable mitigating factors in Doe's case.  We affirm.

Background.  Doe, starting at the age of nineteen, frequently and repeatedly sexually abused and raped his sister for three years.  Doe further threatened to break her neck and kill her if she ever disclosed the abuse.  Doe pleaded guilty to three counts of rape and abuse of a child and was sentenced to

prison for eight to ten years followed by a seven-year probation term.

Discussion.  A level three classification is warranted where the examiner "make[s] explicit" findings, supported by clear and convincing evidence, that the offender presents "a high risk of reoffense, a high degree of dangerousness, and [that] a public safety interest is served by active dissemination of the offender's registry information."  Doe, Sex Offender Registry Bd. No. 6729 v. Sex Offender Registry Bd., 490 Mass. 759, 768 (2022).  See G. L. c. 6, § 178K (2) (c).  "A reviewing court may set aside or modify SORB's classification decision where it determines that the decision is in excess of SORB's statutory authority or jurisdiction, violates constitutional provisions, is based on an error of law, or is not supported by substantial evidence."  Doe, Sex Offender Registry Bd. No. 496501 v. Sex Offender Registry Bd., 482 Mass. 643, 649 (2019) (Doe No. 496501), citing G. L. c. 30A, § 14 (7).  "Substantial evidence" is "such evidence as a reasonable mind might accept as adequate to support a conclusion."  Doe, Sex Offender Registry Bd. No. 68549 v. Sex Offender Registry Bd., 470 Mass. 102, 109 (2014) (Doe No. 68549), quoting G. L. c. 30A, § 1 (6).

2

"A hearing examiner has discretion . . . to consider which statutory and regulatory factors are applicable and how much weight to ascribe to each factor, and . . . a reviewing court is required to give due weight to the [examiner's] experience, technical competence, and specialized knowledge" (quotation and citation omitted). Doe No. 68549, 470 Mass. at 109-110. When an examiner does not sufficiently address an offender's evidence concerning the application of a regulatory factor, we "ask whether the error may have affected the classification and, if so, . . . remand to SORB," thus "comport[ing] with our statutory mandate to determine whether the substantial rights of any party may have been prejudiced" (quotation and citation omitted). Doe, Sex Offender Registry Bd. No. 22188 v. Sex Offender Registry Bd., 101 Mass. App. Ct. 797, 804 (2022) (Doe No. 22188).

Here, the examiner concluded by clear and convincing evidence that Doe posed "a high risk to reoffend and a high degree of dangerousness such that a substantial public safety interest is served by active dissemination . . . of his sex offender registry information." The examiner applied high-risk factor 3 (adult offender with child victim), and risk-elevating factors 8 (weapon, violence, or infliction of bodily injury), 9 (alcohol and substance abuse), 16 (public place), 18

3

(extravulnerable victim), and 19 (level of physical contact) because she found that Doe had repeatedly raped his six year old prepubescent sister, an age considered extravulnerable, with a high level of physical contact, and that during the offending behaviors Doe threatened to kill both the victim and her care givers. The examiner additionally applied risk elevating factors 10 (contact with criminal justice system), 11 (violence unrelated to sexual assaults), 12 (behavior while incarcerated or civilly committed), and 13 (non-compliance with community supervision) because Doe had extensive contact with the criminal justice system beginning at a young age, which included episodes of violence unrelated to the sexual assaults of his sister, [RA VI:15-19], and had accrued a "voluminous number of disciplinary reports while incarcerated which includes drug related charges and violence."

1. Factor 7. Factor 7 recognizes three categories of relationships between an offender and a victim: intrafamilial, extrafamilial, and strangers. 803 Code Mass. Regs. § 1.33(7) (2016).

> "The relationship between an offender and the victim is an important variable in determining risk of reoffense and degree of dangerousness. . . . Offenders who only target intrafamilial victims may be at a lower risk to reoffend as compared to offenders who target unrelated victims. However, having an intrafamilial victim is not a risk mitigating, nor a risk elevating, factor. It is included for definitional purposes only." Id.

4

A hearing examiner is required to rely on the factors set forth in the SORB regulations in determining an offender's risk and danger. 803 Code Mass. Regs. § 1.33 (2016). Doe suggests that, based on an article he submitted, the examiner should have ignored the language of the factor 7 regulation and considered the relationship between Doe and the victim as a risk-mitigating factor. It is clear, based on the language of the regulation, that SORB considered scientific research about intrafamilial relationships between offenders and victims in adopting factor 7. Plainly, the examiner considered the relationship between Doe and the victim; "how much weight to ascribe to each factor" is a matter within the examiner's discretion. Doe No. 68549, 470 Mass. at 109-110. Doe has given us no sound basis on which to conclude that this discretion was abused.

2. Factors 9 and 19. Factor 9 applies where an offender "has a history of substance abuse." 803 Code Mass. Regs. § 1.33(9)(a) (2016). It was within the examiner's discretion to apply it here, given Doe's continuance without a finding for possession of marijuana in 2007, and multiple drug-related infractions during his present incarceration, including the "introduction of [S]uboxone through the mail system" in 2017, a positive drug test in 2018, tampering with a urine sample in 2020, and stealing drugs from other inmates. The examiner did

5

acknowledge that Doe completed a recovery program in 2023.  The examiner, nevertheless, acted within her discretion in applying factor 9 based on Doe's history of substance abuse.  See Doe No. 22188, 96 Mass. App. Ct. at 742 ("[A] hearing examiner has discretion . . . to consider which statutory and regulatory factors are applicable and how much weight to ascribe to each factor" [quotation and citation omitted]).

Doe also unsuccessfully claims that the examiner misapplied factor 19 by failing to include a more detailed discussion of a scientific article Doe submitted.  At the time of the hearing, factor 19 stated, "Sexual assault[s] involving penetration [have] been shown to cause increased psychological harm to the victim.  The offender who engages in penetration, especially penile penetration, as part of the sexual assault poses an increased degree of dangerousness."  803 Code Mass. Regs. § 1.33(19) (2016).  Doe purports this his article shows "that the use of force, injury or the degree of sexual contact has little predictive value for making a determination for future sexual recidivism."

By claiming that the premise of Factor 19 is at odds with the scientific research, Doe's argument effectively aims at the scientific validity -- and, implicitly, the constitutionality -- of factor 19 generally, and for that reason must fail here.  "A

6

challenge to the constitutionality of a regulation of general application is appropriately presented as an action for declaratory judgment."  Doe, Sex Offender Registry Bd. No. 10800 v. Sex Offender Registry Bd., 459 Mass. 603, 629 (2011).  As discussed supra, a hearing examiner is required to rely on SORB's factors in determining the risk posed by an offender.  A hearing examiner has no "authority to determine the constitutionality of [SORB's] regulations" and "is obligated to apply the risk factors . . . irrespective of the examiner's opinion as to their constitutionality."  See id. at 630.  Consequently, in this appeal stemming from an agency determination, and in the absence of an original action for declaratory relief in Superior Court, this claim is not properly before us.  Id.

3.  Factors 8, 10, 11, 12, and 37.  Issues not raised in the Superior Court cannot be raised on appeal.  Doe, Sex Offender Registry Bd. No. 3974, v. Sex Offender Registry Board, 457 Mass. 53, 57-58 (2010).  Although Doe did challenge the examiner's findings as to factors 10 and 11 in the Superior Court, those challenges were limited to how the examiner interpreted those factors in light of a scientific article Doe submitted; Doe did not challenge, as he does here, whether the examiner's decision was "based on [Doe's] current

7

circumstances."  And Doe did not challenge the examiner's findings related to factors 8, 12, or 37, whatsoever.  These claims are thus waived.

4.  Internet publication.  We are unpersuaded by Doe's argument that the examiner abused her discretion in concluding that Internet publication is warranted.  "Where a sexually violent offender presents a moderate risk to reoffend and a moderate degree of dangerousness, Internet publication will almost invariably serve a public safety interest by notifying potential victims of the risks presented by the offender in their geographic area."  Doe No. 496501, 482 Mass. at 655.  This conclusion is even more compelling where, as here, the offender presents "a high risk to reoffend and a high degree of dangerousness."

We discern no error in the examiner's conclusion.  She noted that much of Doe's conduct, which included threats of violence, spoke "to [Doe]'s dangerousness and impulsiveness," and that even while incarcerated "he has continued to defy rules and regulations."  The examiner also considered that the young age of the victim indicates a risk that future victims may also be of a similarly vulnerable age, further recommending publication to protect against that risk.  Doe's argument that he poses no risk to anyone except for his family (and that he

8

will never have access to his family again) flies in the face of his high risk for recidivism.  The examiner's conclusion that Internet publication is warranted was not an abuse of discretion.

<u>Judgment affirmed</u>.

By the Court (Vuono, Ditkoff & D'Angelo, JJ.[1]),

Clerk

Entered:  March 12, 2026.

---

[1] The panelists are listed in order of seniority.

9